# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | : | ID. No. 1607020376 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORDAN O. HARRIS, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## ORDER

Submitted: July 9, 2021
Decided:  September 21, 2021

On this 21ˢᵗ  day of September 2021, after considering Defendant Jordon Harris' motion for postconviction relief, the State's opposition, the Commissioner's Report and Recommendation, Mr. Harris' appeal from the Commissioner's Report and Recommendation, and the record in this case, **IT APPEARS THAT**:

1.  On July 20, 2017, a jury found Mr. Harris guilty of the following:  one count of Possession of a Firearm by a Person Prohibited, 11 *Del. C*. § 1448; one count of Possession of Firearm Ammunition by a Person Prohibited, 11 *Del. C*. § 1448; one count of Resisting Arrest, 11 *Del. C*. § 1257; one count of Driving under the Influence, 21 *Del. C*. § 4177; and several other Title 21 traffic offenses.

2. After a presentence investigation, the Court sentenced Mr. Harris to twenty-five years incarceration, suspended after seven years, followed by probation. Mr. Harris then filed a direct appeal and requested to proceed *pro se* during his appeal. On April 16, 2019, the Delaware Supreme Court affirmed his convictions.[1]

3. On May 9, 2019, Mr. Harris filed a *pro se* motion for postconviction relief and an accompanying motion for appointment of counsel. The Court granted the latter. Thereafter, his postconviction counsel filed an amended motion. The amended motion alleges ineffective assistance of trial counsel because trial counsel chose not to file a motion to suppress in his case.

4. A Commissioner of this Court issued her Report and Recommendation on June 23, 2021 (the "Report"). First, the Report sets forth the facts and appliable standard for this postconviction motion which the Court adopts without repeating.[2] Second, in her Report, the Commissioner recommends that the Court finds Mr. Harris' motion to be procedurally barred pursuant to Superior Court Criminal Rule 61(i)(3).[3] Third, she also recommends that the Court find that trial counsel (1) competently represented Mr. Harris, and (2) trial counsel's decision not to file a motion to suppress caused Mr. Harris no prejudice.[4]

5. Mr. Harris now appeals the Commissioner's findings of fact and recommendations. In reviewing his appeal, the Court conducts a *de novo* review "of those portions of the report or specified proposed findings or recommendations to which an objection is made."[5] Pursuant to that review, the Court may either accept,

---

[1] *Harris v. State*, 210 A.3d 143 (Table), 2019 WL 1752646, at *4 (Del. April 16, 2019).
[2] *State v. Harris,* 2021 WL 3829829, at *1-3 (Del. Super. June 23, 2021).
[3] *Id.* at *1. *See* Super. Ct. Crim. R. 61(i)(3).
[4] *Id.* at *8.
[5] Super. Ct. Crim. R. 62(a)(5)(iv).

reject, or modify the report in whole or in part.[6]  In his appeal, Mr. Harris first argues that the Commissioner erred when she found his motion to be procedurally barred. Second, he argues that she erred by recommending that the Court deny his motion on substantive grounds.  He contends that the officer performed a *Terry*-level seizure when the officer approached his vehicle and activated the strobe function on her flashlight.[7]  According to Mr. Harris, the seizure was unlawful at that point because the police officer did not have reasonable articulable suspicion that the car's occupants had engaged in criminal activity.[8]

6.  At the outset, Mr. Harris correctly recognizes that Rule 61(i)(3) does not procedurally bar his claim.  Namely, Rule 61(i)(3) applies to "any ground for relief that was not asserted in the proceedings leading to the judgment of conviction."[9] The recent Delaware Supreme Court decision in *Green v. State* clarifies that Rule 61(i)(3)'s procedural bar does not apply in this case because Mr. Harris could not have raised his ineffective assistance of counsel claim during his trial or direct appeal.[10]

7.  Nevertheless, Mr. Harris' motion must be denied on substantive grounds for many of the reasons recognized by the Commissioner.  Namely, when the Court applies the controlling standard, as set forth in *Strickland v. Washington,*[11]

---

[6] *Id.*

[7] *See Lopez-Vazquez v. State,* 956 A.2d 1280, 1286-89 (Del. 2008) (discussing the standard for evaluating the seizure of a motor vehicle under the *Terry* framework).

[8] *Id.* at 1286.

[9] Super. Ct. Crim. R. 61(i)(3).

[10] *See Green v. State,* 238 A.3d 160, 175 (Del. 2020) (recognizing that "the failure to assert an ineffective-assistance-of-counsel claim in the proceedings leading to the judgment of conviction is not a procedural default"); *but see* (Vaughn, J., concurring) (opining that in part, Rule 61(i)(3) may still procedurally bar ineffective assistance of counsel claims "that could have been but were not raised at trial.").

[11] 466 U.S. 668 (1984).

postconviction relief is unavailable. In her Report, the Commissioner examined the objective reasonableness of trial counsel's actions. She found counsel's decision not to file a suppression motion to be objectively reasonable.[12] The Commissioner also examined whether trial counsel's decision to not file a motion caused Mr. Harris prejudice. She also recommended that the Court find no prejudice.[13]

8. In Mr. Harris' appeal, he maintains his focus on whether trial counsel should have filed a suppression motion. Specifically, he argues that the officers' actions so obviously lacked in reasonable articulable suspicion that (1) trial counsel should have filed a motion, and (2) the motion would have had a reasonable probability of success. Furthermore, Mr. Harris contends that the officer conducted a *Terry*-level seizure when she activated the strobe function on her flashlight. He argues that, at that point, the officers had no reasonable justification to seize Mr. Harris' vehicle.

9. The State counters by arguing that the initial seizure did not take place until the officers began their chase of the fleeing vehicle – namely, when one of the police cars activated its emergency equipment with the chase in progress. The State further contends that, in the absence of a suppression motion, the State had no incentive to develop a record regarding the issue at trial.

10. At the outset, the State, in fact, had no incentive or obligation to develop a trial record addressing the justification for the officers' search and seizure decisions. Nevertheless, even without that incentive, the trial evidence demonstrates that Mr. Harris would have had no reasonable probability of success had he filed a

---

[12] *Harris,* 2021 WL 3829829, at *8.
[13] *Id.*

suppression motion.[14]   The Court presided over the trial and has again thoroughly reviewed the record which includes the testimony of multiple officers.   The Court also reviewed the MVR video that the State presented at trial.  That video shows the relevant exchange between the officers and Mr. Harris' vehicle.

11.   Here, the trial evidence demonstrates that the Delaware State Police and the Governor's Task Force sought to apprehend a third-party, Dana Legrande, at his home address, 417 North Street, in Milford, Delaware (the "Residence").[15]   Police and Probation and Parole officers wanted Mr. Legrande for a violation of probation and for other outstanding capiases.[16]   They surveilled the Residence during the night of July 16, 2016.[17]   As they observed the Residence, the officers saw a car, with two male occupants, stop directly in front of it at approximately 11 p.m.[18]   The MVR video shows the car stop in a manner consistent with either dropping an occupant off at the Residence or waiting to pick up an additional person from it.[19]   As a police officer exited her car and approached the rear of the stopped vehicle, the vehicle started to move slowly ahead.  At that point, the officer activated the strobe function on her flashlight to alert the car's occupants of her presence.  The vehicle then abruptly "sped away."[20]   The MVR video confirms that the car left at a high rate of speed that clearly exceeded the speed limit in a residential neighborhood.   At that

---

[14] *See State v. Feliciano*, 2015 WL 1946045, at *4 (Del. Super. Jan. 15, 2015) (citing *Williams v. State,* 12 A.3d 1155 (Del. 2011) (requiring "a defendant in the context of a Rule 61 motion to prove a reasonable probability of success on a motion to suppress to prove prejudice from counsel's deficient performance")). *See also Younger v. State,* 580 A.2d 552, 556 (Del. 1990) (requiring the defendant to set forth and substantiate concrete allegations of actual prejudice)).
[15] A63.
[16] A61.
[17] *Id.*
[18] State's Ex. No. 1.
[19] *Id.*
[20] A64.

point, the officers reentered their vehicles and activated their emergency equipment shortly after beginning the chase.

12. Here, the decision to not file a suppression motion did not cause Mr. Harris prejudice because no viable claim existed. First, the initial seizure did not take place until the police activated their emergency equipment after Mr. Harris' vehicle sped away.[21] Under the circumstances of this case, the act of a police officer stopping behind an occupied car and approaching the car with a flashlight did not constitute a seizure.[22] To deem it as such would prevent law enforcement officers from approaching any vehicle stopped on the roadway, absent suspicion of criminal activity. Such a rule-based finding would also inappropriately prohibit officers from using lighting for their own safety while checking on vehicles at night on roadways.

13. Here, the seizure occurred after the car fled the scene when an officer activated the police car's emergency equipment during the chase. At that point, the trial record demonstrates that the following facts were available to the officers: a driver had stopped his vehicle at night in front of a residence of a wanted person, and the driver then abruptly fled from the police in a residential neighborhood at a high rate of speed when recognizing that an officer was approaching his car. Those

---

[21] *See State v. Enos,* 2003 WL 549212, at *2 (Del. Super. Feb. 26, 2003) (noting that "[a]lthough a decision whether a seizure has occurred depends upon all the circumstances, a number of Delaware cases have held that a seizure occurs when a police cruiser pulls up to a vehicle and activates its emergency flashers."). *See also State v. Clay,* 2002 WL 1162300, at *2 (Del. Super. May 28, 2002) (concluding that the act of pulling behind the defendant and turning on emergency lights constituted a seizure under the circumstances).

[22] *See United States v. Hayden*, 759 F.3d 842, 847 (8th Cir. 2014) (holding that "for Fourth Amendment purposes shining a flashlight to illuminate a person is not a coercive act that communicates an official order to stop or comply"); *see also United States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006) (concluding that the officers' use of a flashlight was insignificant and would not cause a reasonable person to feel compelled to remain given that it was 2 a.m. in a dark parking lot). *See Flowers v. State,* 195 A.3d 18, 24 (Del. 2018) (noting "[a] person is 'seized' when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.")).

facts provided more than a mere hunch that the vehicle's occupants were engaged in criminal activity.[23]   When viewed in their totality, they provided reasonable suspicion that the car's occupants (1) included a wanted individual, and (2) the car's driver drove at an unsafe speed in a residential neighborhood.

14. Furthermore, had Mr. Harris' trial counsel filed a suppression motion, it would have failed for an additional reason.  Namely, even had the initial stop been deemed to occur at the time the officer turned on her flashlight, the car's driver did not have free license to recklessly speed away in a residential neighborhood.  The vehicle's subsequent unsafe movement constituted criminal activity that provided a subsequent independent basis for seizing the vehicle.  Here, the facts of record do not involve an individual merely avoiding police contact by walking away or even running away.   Rather, the driver's decision to speed away in a car in a residential neighborhood provided more than the reasonable articulable suspicion necessary to stop the vehicle, based upon the new conduct.   Regardless of when the initial stop occurred, the police had reasonable justification to stop the speeding vehicle.

**NOW, THEREFORE,** after a *de novo* review of the record in this action, and consideration of the parties' arguments and the Commissioner's Report and Recommendation dated June 23, 2021;

**IT IS HEREBY ORDERED** that the Commissioner's Report and Recommendation is adopted in part by the Court.  The Court declines to accept the Commissioner's recommendation that Mr. Harris' claim was procedurally barred, but accepts her recommendations that Mr. Harris' claim is substantively barred for

---

[23] *See State v. Murray,* 213 A.3d 571, 579 (Del. 2019) (quoting *Robertson v. State*, 596 A.2d 1345, 1350 (Del. 1991)) (explaining "[a] vague hunch or feeling that the defendant 'looked suspicious' will not do," rather, the police must have "a reasonable articulable suspicion of criminal activity").

the reasons she provided and for the reasons discussed in this Order. As a result, Mr. Harris' Amended Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 must be **DENIED**.

       **IT IS SO ORDERED.**


              <u>/s/Jeffrey J Clark</u>
              Resident Judge



JJC/klc
oc:  Prothonotary
cc:  The Honorable Andrea M. Freud
     Trial Counsel
     Postconviction Counsel of Record

8